Harold Lloyd Murphy, SENIOR UNITED STATES DISTRICT JUDGE
*1301 This case is before the Court on the Motion in Limine filed by Defendant James W. Hobgood ("Defendant") [67].[1]
I. Background
The Clerk set this case for trial on the Court's May 7, 2018, trial calendar. (Notice Setting Trial (Docket Entry No. 60).) On March 21, 2018, the Court entered an Order directing the Parties to file their Motions in Limine, if any, by April 4, 2018. (Order of Mar. 21, 2018 (Docket Entry No. 60).) The Court later extended that deadline to April 6, 2018. (Order of Apr. 2, 2018 (Docket Entry No. 62).)
On April 6, 2018, Defendant filed his Motion in Limine. (Def.'s Mot. Limine (Docket Entry No. 67).) The briefing process for that Motion is complete, and the Court finds that the matter is ripe for resolution.
II. Discussion
A. The Parties' Positions
1. Defendant's Motion
Defendant argues that the Parties filed no Daubert Motions in this case and that the Parties therefore waived all objections to expert testimony. (Def.'s Mot. Limine at 1; Br. Supp. Def.'s Mot. Limine (Docket Entry No. 67-1) at 1-2.) Defendant initially moved to exclude a number of matters, including: (1) Plaintiff's Exhibits 5, 12, 17, 36, 37, and 39, contending that "these exhibits are maps purporting to show flood zones and flood elevations which contain erroneous or out-of-date information as to the boundaries and elevations of flood zones" (Def.'s Mot. Limine at 2); (2) Plaintiff's Exhibits 5, 12, 17, 36, 37, and 39, arguing that "these exhibits are not relevant or reliable since the same are substantially based upon hearsay, or the author or source of the document is unknown" (id. ); (3) Plaintiff's Exhibits 7, 8, and 9, the expert reports of Plaintiff's appraisal expert, Marion Wilson, contending that these exhibits "contain the above-referenced unreliable information in regard to flood zones and flood elevations; which also contain impermissible conclusions of law; which also contain evidence not related to just compensation; and which also contain inadmissible hearsay," with the exception of page 4 of those exhibits (id. at 2-3); (4) Plaintiff's Exhibits 10, 11, and 38, which are expert reports from Plaintiff's appraiser, Randy Saxon, arguing that these exhibits "contain the above-referenced unreliable information in regard to flood zones and flood elevations; which also contain impermissible conclusions of law; which also contain evidence not related to just compensation; which also contain inadmissible hearsay; and which are the mere opinions of one appraiser over another" (id. at 3); (5) all *1302 testimony from Plaintiff's expert witnesses Wilson and Saxon concerning flood zones, flood maps, and flood elevations, based on Defendant's contentions that "these expert witnesses admit they are not qualified to provide such testimony, and ... their testimony on this matter is significantly unreliable" (id. )[2] ; (6) all testimony of Plaintiff's expert witnesses concerning the highest and best use of the Defendant Property (the "subject property"), based on Defendant's contentions that "these expert witnesses are not qualified to provide such testimony, and ... their testimony on such matters is in the nature of erroneous conclusions of law"[3] (id. at 3-4).
With respect to Plaintiff's Exhibits 5, 12, 17, 36, 37, and 39, which are flood maps or elevation maps, Defendant contends that "these maps, standing alone, show out-of-date and erroneous information as to the boundaries and elevations of flood zones," and "[s]uch maps, standing alone, give the jury false evidence as to the true boundaries of the flood zones within the ... subject property" and "are NOT reliable." (Br. Supp. Def.'s Mot. Limine at 2 (capitalization in original).) According to Defendant, his own expert, professional engineer Karl Lutjens, determined the true actual boundaries of the flood zones on the subject property. (Id. at 2-3.) Defendant argues that Plaintiff's own experts noted that a professional engineer would be in a better position than they would to determine the ability to build in a flood zone. (Id. at 3-4.) Defendant also contends that Mr. Saxon "admits that he has no specific training or expertise in dealing with flood zone issues," while Mr. Wilson "agrees that sometimes a FEMA flood map is not correct, and that a qualified study of actual elevations would be superior potentially to a FEMA map." (Id. at 4.) According to Defendant, "it is readily apparent that [Plaintiff's experts] do not have the requisite qualifications to give opinions on maps that they did not prepare, which maps are acknowledged to be inferior to maps prepared by a qualified professional engineer, and which maps are unreliable, except to serve as a basis for the construction of more up-to-date and superior maps as prepared by [Mr. Lutjens]." (Id. ) Defendant therefore contends that Plaintiff's "flood maps and elevation maps are incomplete and unreliable as submitted, and should be excluded as evidence." (Id. )
With respect to the second portion of Defendant's Motion in Limine, Defendant argues that Mr. Saxon "gives his opinion that residential use of the [subject property] is limited due to the flood zone," but "Mr. Saxon confirms that this opinion is based on conversations with persons in different counties who are not engineers that have actually worked on the [subject property]." (Br. Supp. Def.'s Mot. Limine at 5.) Defendant notes that Mr. "Saxon and [Mr.] Wilson both acknowledge that they did not prepare any of the exhibits listed above, but were provided these exhibits from other persons or obtained from other sources," while Plaintiff's witness, Melvin Dean, stated "that he prepared Plaintiff['s] Exhibit 36, that this map came from FEMA, and no other flood information was used to prepare this map." (Id. ) Defendant contends that "it is evident that the map exhibits submitted by [Plaintiff] are outdated, unreliable documents, based on FEMA maps that show mere estimates of flood areas, or based on outside sources *1303 that are unknown or indefinite." (Id. ) According to Defendant, these "exhibits are inadmissible hearsay evidence which should be excluded." (Id. )
With respect to Plaintiff's Exhibits 7, 8, and 9, which consist of Mr. Wilson's expert reports, Defendant objects to the admission of those expert reports in their entirety at trial. (Br. Supp. Def.'s Mot. Limine at 6.) Defendant notes, however, that he "has stipulated to the admission of page 4 of each of these documents at trial." (Id. ) Defendant argues, however, that the entire expert reports "contain the actual flood maps and discussions of flood zones" that he objected to earlier in his Motion, and that the reports "contain hearsay evidence, information from unknown sources, impermissible legal conclusions, and unqualified opinions, all of which information should not be admissible, standing alone, but which may be the supporting information upon which an expert is allowed to render opinions." (Id. )
Defendant raises similar objections with respect to Plaintiff's Exhibits 10, 11, and 38, which consist of Mr. Saxon's expert reports. (Br. Supp. Def.'s Mot. Limine at 7.) Defendant argues that Plaintiff's Exhibit 10 "contains Saxon opinions in regard to matters of flood zones and flood elevations that this appraiser has admitted is beyond his area of expertise, and is based upon hearsay." (Id. ) Defendant also contends that the document is "basically an attempted attack on Defendant's appraisal on a mere subjective level." (Id. ) Defendant further argues that Plaintiff's Exhibit 11 "is an improper 'commercial review form' not directly tailored to the issues of this case, based on hearsay, based on unreliable evidence, and highly prejudicial to [Defendant]." (Id. at 7-8.)
With respect to testimony from Mr. Wilson and Mr. Saxon concerning flood zones, flood maps, and flood elevations, Defendant argues that these witnesses "have admitted that they are not qualified to render expert opinions in these flood matters." (Br. Supp. Def.'s Mot. Limine at 8.)[4] Defendant contends that the Court must prohibit the witnesses from testifying that the subject property "can only be used for agricultural purposes, due to their falsely-perceived flood zone notions, and as may arise from other unsubstantiated notions." (Id. at 10-11.)
2. Plaintiff's Response
Plaintiff notes that "the core theme of Defendant's omnibus motion is to prevent the jury from hearing evidence of FEMA flood zone designations for [the subject] property," specifically, "evidence that, as of the date of taking, the flood insurance rate map (FIRM) for [the subject] property shows that approximately ninety percent of his land is in the 100-year flood zone." (Resp. Def.'s Mot. Limine at 3.) Plaintiff notes that Flood Insurance Rate Maps, which are "prepared by FEMA and published to FEMA's official website, are used by federal, state, and local governments and by private banks and insurers in their decision making relating to zoning, permitting, and financing the development of land." (Id. ) Plaintiff argues that "Defendant's absurd argument that the FEMA maps and testimony and exhibits derived from FEMA maps are too unreliable to even be considered by the jury is uninformed by the law and logically flawed." (Id. ) Plaintiff describes the FEMA flood map process and how government agencies use the maps. (Id. at 4.) Plaintiff notes that such maps provide "a guide for homeowners *1304 to learn about risks for localized flooding," and states that "FEMA's mapping of areas prone to flooding helps government officials determine requirements for flood insurance in high-risk areas." (Id. ) Plaintiff states that "[t]he nationwide map is regularly updated based on the most recently collected data on storm tides, river flow, rainfall, and land surveys." (Id. ) Plaintiff cites FEMA's website for the proposition that "the FIRM is a flood map created by [FEMA] used by the National Flood Insurance Program (NFIP) for floodplain management, mitigation, and insurance purposes." (Id. (alteration in original) (internal quotation marks and citation omitted).) Plaintiff notes that, according to FEMA, "[t]he FIRM typically shows (1) roads and map land marks; (2) a community's base flood elevations; (3) flood zones; and (4) floodplain boundaries." (Id. at 5.)
Plaintiff argues that "[t]his is a federal condemnation action governed by federal law, and the federal Interagency Land Acquisition Conference is responsible for promulgating[ ] appraisal standards used in federal land acquisitions," which "are found in the Uniform Appraisal Standards for Federal Land Acquisitions, which is commonly referred to as the 'Yellow Book.' " (Resp. Def.'s Mot. Limine at 5; Decl. of Marion A. Wilson, Jr. (Docket Entry No. 75-3) ¶¶ 2-3, 5.) According to Plaintiff, "[t]he Yellow Book includes an affirmative requirement that appraisers consider flood hazards in forming their opinions and that appraisal reports include a statement as to whether the property is in a flood zone area." (Resp. Def.'s Mot. Limine at 5.) Plaintiff notes that the Yellow Book requires "an affirmative statement ... if the property is located within a flood hazard area," and "instruct[s] appraisers to refer to the [FEMA] flood hazard maps for this purpose." (Id. at 5-6 (internal quotation marks and citations omitted); Wilson Decl. ¶ 6.) Plaintiff states that its appraisers "reviewed and assessed the applicable FEMA flood maps for the subject property." (Resp. Def.'s Mot. Limine at 6.) Plaintiff notes that "[t]he FIRM panels cited in Mr. Wilson's report are published to FEMA's official governmental website." (Id. at 6; see also Wilson Decl. ¶ 10 (noting that he cited "the flood maps published on the FEMA website as of the date of [his] report," and stating that "[a]s of April 16, 2018, there had been no published changes or updates to the FEMA flood maps referenced in [his] report").) Plaintiff points out that "the FEMA flood maps are independently admissible evidence as public records, and opinion testimony of Plaintiff's appraisers that considered these public records is admissible because it is generally accepted within the field of appraisal for an appraiser to consider FEMA flood maps in forming opinions of a property's highest and best use of the property's value." (Resp. Def.'s Mot. Limine at 6-7.)
Plaintiff argues that, under Federal Rule of Evidence 703, experts may base their opinions on facts or data in the case that they have been made aware of or have personally observed. (Resp. Def.'s Mot. Limine at 9.) According to Plaintiff, if experts in the particular field would reasonably rely on the facts and data in forming an opinion, those facts or data need not be independently admissible for the expert's opinion to be admitted. (Id. ) Thus, Plaintiff contends that "[h]earsay testimony by an expert is permitted if it is based upon the type of evidence reasonably relied upon by experts in that particular field." (Id. (citation omitted).) Plaintiff argues that its experts could consider hearsay relating to the flood zones because it is the type of evidence reasonably relied upon by experts in the field. (Id.; Wilson Decl. ¶ 9.)
*1305 Plaintiff also contends that Defendant's challenges to the testimony of Mr. Wilson and Mr. Saxon are untimely Daubert motions. (Resp. Def.'s Mot. Limine at 9-10.) Plaintiff further points out that it has not disclosed either of those individuals "as an engineer qualified to render opinions regarding the precise location of the flood plain on [the subject property]; accordingly, their lack of specific training or expertise regarding engineering and surveying is not relevant to the formation of their opinions." (Id. at 10 n.8 (internal quotation marks and citation omitted).) In any event, Plaintiff notes that Mr. Wilson and Mr. Saxon, as licensed appraisers, are qualified to consider the flood zone when appraising property, and, indeed, are required to consider it under the applicable standards and the Yellow Book. (Id. at 10-13; Wilson Decl. ¶¶ 2-3, 5-6.) Plaintiff notes that the FEMA maps that Mr. Wilson cited were the flood maps published on the FEMA website as of the date of Mr. Wilson's report, and these maps remained unchanged as of April 16, 2018. (Resp. Def.'s Mot. Limine at 13; Wilson Decl. ¶ 10.) To the extent that Defendant argues that Mr. Wilson's opinions failed to take into account Mr. Lutjen's opinions, Plaintiff notes that Mr. Lutjens had not issued his opinions at the time Mr. Wilson issued his report and that, in any event, an opinion based on Mr. Lutjen's opinions would not clearly conform to the Yellow Book's requirements. (Resp. Def.'s Mot. Limine at 13-14; see also Wilson Decl. ¶ 11 ("Mr. Lutjens' report and drawings are dated July 17, 2017, and, based on my review of the FEMA website, as of April 16, 2018, FEMA had not modified, or issued any official documentation amending its official flood maps for the [subject property]."); id. ¶ 12 ("[A]n opinion based on assumed changes in FEMA designated flood hazard areas would not clearly conform to Yellow Book instructions for valuing property for a federal land acquisition.").)
With respect to Plaintiff's Exhibits 7, 8, and 9, the full and complete expert reports from Mr. Wilson, Plaintiff argues that the Court should deny this portion of Defendant's Motion in Limine as moot. (Resp. Def.'s Mot. Limine at 7.) Plaintiff notes that "[t]he parties previously agreed that the reports of their respective experts would be marked as exhibits but would not be offered into evidence," and states that, "conditioned on the exclusion applying to all parties, Plaintiff does not oppose exclusion of the reports prepared by the parties' retained experts." (Id. (footnote omitted).)
With respect to Plaintiff's Exhibits 10, 11, and 38, Mr. Saxon's expert reports, Plaintiff contends that this portion of Defendant's Motion in Limine is moot. (Resp. Def.'s Mot. Limine at 7.) Plaintiff again notes that "[t]he parties previously agreed that the reports of their respective experts would be marked as exhibits but would not be offered into evidence," and states that, "conditioned on the exclusion applying to all parties, Plaintiff does not oppose exclusion of the reports prepared by the parties' retained experts." (Id. at 7-8.) Plaintiff notes, however, that it opposes "exclusion of information that merely represents a compilation of data, or shows maps and photographs related to the subject property." (Id. at 8.) Plaintiff contends that the Court should exclude all of Exhibits 10 and 11, but should not exclude "those portions of Exhibit 38 that represent only data, maps, photographs and the like." (Id. )
3. Defendant's Reply
Defendant admits that "the core theme of Defendant's omnibus motion is to prevent the jury from hearing [or seeing] evidence of FEMA flood zone designations from [the subject] property." (Reply Supp. Def.'s Mot. Limine (Docket Entry No. 78) at 2.) Defendant, however, notes that "this *1306 is only part of the story." (Id. ) Defendant states:
[Defendant] does not object to Plaintiff's FEMA flood zone evidence per se; what Defendant does strongly object to is a scenario whereby the jury would be exposed to evidence from FEMA maps showing the boundary of a flood zone to be at one particular location, yet the jury would be denied the opportunity to see evidence showing a different boundary of the flood zone, more favorable to the landowner, submitted by [Defendant's] expert engineer. [Defendant] thus filed his Motions in Limine to exclude [Plaintiff's] evidence showing flood boundaries as a protective measure, in anticipation that Plaintiff might file one or more motions in limine to exclude the maps and testimony of Defendant's expert engineer, Karl Lutjens.[5]
(Id. (emphasis in original).) Defendant complains that Plaintiff is attempting "to exclude maps and testimony of [Defendant's] engineer, even despite the fact that [Defendant] has proposed to remove from these maps all of the potential subdivision lots shown thereon." (Id. at 3.) Defendant contends that "Plaintiff and Defendant should be entitled to a level playing field before the jury in regard to flood plain issues," and that, if Plaintiff can present evidence of the FEMA flood zones, Defendant "should likewise be entitled to show the actual flood boundaries as determined by his expert engineer (more favorable to the landowner), simply as a matter of fundamental fairness." (Id. ) According to Defendant, Mr. Lutjen's flood study maps show "that a greater amount of the [subject property], than what is otherwise shown by the FEMA maps, is not even in the flood zone." (Id. at 8.) Defendant states that "Mr. Lutjens will also provide testimony, in accordance with Gordon County regulations, that a substantial part of [the subject property] could be used immediately for residential purposes as of the date of taking." (Id. ) According to Defendant, if the Court excludes this evidence, "the result would be a false factual situation for the jury, where the jury would likely think, erroneously, that all of the [subject property] is in the flood zone, or cannot be used for residential purposes due to the flood zone." (Id. ) Defendant claims that "the flood zone would be erroneously enlarged, to the detriment of [Defendant]." (Id. at 8-9.) Defendant contends that "the flood boundary information from [Plaintiff's experts], in and of itself, would be grossly misleading to the jury." (Id. at 9.)
Defendant argues that "the most equitable action for this Court to take, due to the waiver of objections to experts, is to allow all of the exhibits and testimony from the experts to go to the jury, excepting only the ... full and complete reports of all experts which can be used at trial but not admitted into evidence pursuant [to an] agreement between Plaintiff and Defendant." (Reply Supp. Def.'s Mot. Limine at 10.) Defendant states, "[t]o the extent the Court does not deal with expert witness matters in accordance with Daubert, due to waiver, [Defendant] otherwise proposes that Defendant will withdraw his objections to the one-sided Plaintiff evidence of flood maps and flood testimony based on FEMA information ... SO LONG AS (1) Defendant Exhibits 42, 43, and 44 can be admitted into evidence, and (2) Defendant witness Karl Lutjens can testify to the substance of his expert reports, Exhibits 40 and 41." (Id. at 10 (capitalization in *1307 original).) Defendant offers to remove the subdivision lots from maps if necessary. (Id. at 10-11.) Alternatively, Defendant argues that evidence concerning the subdivision lots is not inappropriate. (Id. at 11-13.)
With respect to the expert reports in Plaintiff's Exhibits 7, 8, 9, 10, 11, and 38, Defendant notes that the Parties agreed that the expert reports would be marked as exhibits and not offered into evidence. (Reply Supp. Def.'s Mot. Limine at 4-5.) Defendant states that his requests in his Motion in Limine seeking to exclude those expert reports "are moot, since all of the entire expert reports will be marked as exhibits for use at trial, but not offered into evidence." (Id. at 5.) Defendant notes that the Parties agreed to admit certain portions of the expert reports. (Id. at 6.)
B. Discussion
1. Expert Reports
The Court denies as moot the portions of Defendant's Motion in Limine that seek to exclude the expert reports contained in Plaintiff's Exhibits 7, 8, 9, 10, 11, and 38, as Plaintiff has agreed not to introduce the entire expert reports, and Defendant has apparently agreed to this result. The portions of Exhibit 38 that simply represent data, maps, photographs, and similar materials, however, likely are admissible, and the Court will not exclude those portions of Exhibit 38 at this time.
The Court denies the portion of Defendant's Motion in Limine seeking to exclude Plaintiff's Exhibits 5, 12, 17, 36, 37, and 39. Defendant has no credible argument for excluding FEMA flood maps as unreliable. The maps are what they are. Mr. Wilson cited the flood maps published on FEMA's website as of the date of his report, and those maps had not been changed or updated as of April 16, 2018. Defendant thus cannot credibly contend that the maps are outdated or irrelevant. Further, the maps qualify for the public records hearsay exception under Federal Rule of Evidence 803(8). Thus, to the extent that Defendant seeks to exclude the opinions of Mr. Saxon and Mr. Wilson simply because Mr. Saxon and Mr. Wilson relied on the FEMA maps, this argument clearly fails.
The Court agrees with Plaintiff that, to the extent that Defendant's Motion in Limine seeks to exclude Mr. Saxon's and Mr. Wilson's expert testimony, the Motion is an untimely and improper Daubert motion. In any event, Defendant's Motion fails because the relevant standards required Mr. Saxon and Mr. Wilson to consider the FEMA maps and the physical attributes of the subject property when reaching their opinions. Moreover, even if the FEMA maps are hearsay, Mr. Saxon and Mr. Wilson can rely on those maps because it is generally accepted within the appraisal profession for appraisers to refer to FEMA flood hazard maps. Mr. Saxon and Mr. Wilson are not purporting to testify as engineers concerning the precise location of the flood plain on the subject property, and they do not need specific training or expertise concerning engineering or surveying to give admissible appraisal opinions in this case. Finally, Mr. Saxon and Mr. Wilson need not have considered Mr. Lutjen's flood maps and opinions when reaching their opinions for their opinion testimony to be admissible.
In his reply, Defendant contends that he simply seeks a level playing field and does not seek to exclude the FEMA map evidence so long as he can present evidence from his own expert concerning flood boundaries. Defendant's initial Motion and brief certainly did not make that position clear. The Court suspects that Defendant is really trying to back-door *1308 Mr. Lutjen's subdivision plan and testimony relating to that subdivision plan into being admissible in evidence. That plan and related testimony are not admissible for the reasons stated in the Court's Order addressing Plaintiff's Motions in Limine. The Court, however, does not interpret Plaintiff's Motions in Limine as trying to exclude all of Mr. Lutjen's testimony concerning flood zones. If Defendant can figure out how to present maps from Mr. Lutjens that do not have subdivision lots or the subdivision plan on them, and if Defendant refrains from soliciting opinion testimony from Mr. Lutjens concerning subdivision plans, Defendant should be able to show the jury where Mr. Lutjens thinks the flood zones actually lie. Under those circumstances, Defendant's concerns about undue prejudice or an uneven playing field are misplaced.
III. Conclusion
ACCORDINGLY, the Court DENIES IN PART AND DENIES AS MOOT IN PART Defendant's Motion in Limine [67]. The Court DENIES AS MOOT the portions of Defendant's Motion in Limine that seek to exclude the expert reports contained in Plaintiff's Exhibits 7, 8, 9, 10, 11, and 38. The Court DENIES the portion of Defendant's Motion in Limine seeking to exclude Plaintiff's Exhibits 5, 12, 17, 36, 37, and 39. Finally, the Court DENIES the portion of the Motion in Limine to the extent that Defendant seeks to exclude expert testimony from Plaintiff's experts, Mr. Saxon and Mr. Wilson, and to the extent that Defendant seeks to admit a subdivision plan prepared by his expert, Mr. Lutjens, into evidence.
IT IS SO ORDERED, this the 3rd day of May, 2018.

In its response to Defendant's Motion in Limine, Plaintiff comments that "Defendant's omnibus motion includes six separate motions." (Resp. Def.'s Mot. Limine (Docket Entry No. 75) at 1 n.1 (citation omitted).) The Court is not troubled by the fact that Defendant's Motion in Limine addresses several issues. Indeed, the Court's preference is for Parties to file all issues relating to Motions in Limine in a single motion, rather than cluttering the docket with separate Motions for each issue. With that said, the Court will address Plaintiff's five Motions in Limine in a separate Order.

The Court observes that qualifications of expert witnesses and reliability of expert testimony are classic Daubert issues. If Defendant is correct in his contention that the Parties waived Daubert objections, Defendant surely waived these two objections.

Again, these arguments are classic Daubert arguments.

This issue is clearly a Daubert matter, and Defendant's arguments to the contrary do not pass the straight-face test.

With all due respect to Defendant and his counsel, Defendant's Motion in Limine in no way made this intent clear.